## GOVAN v. MUNICIPAL BOND & MORTGAGE CORPORATION.

### Civil Action No. 951.

District Court, S. D. Florida,
Tampa Division.

Nov. 14, 1945.

Uman & Uman of Tampa, Fla., for plaintiff.

Reeves, Allen & Johnson, of Tampa, Fla., for defendant.

DE VANE, District Judge.

This case came on for trial before the court, without a jury, on October 31, 1945, and the parties having submitted evidence in the matter and the court having heard argument of counsel and being fully advised in the premises, makes the following findings of fact and conclusions of law:

### Findings of Fact

1. This is a suit brought by plaintiff against defendant to recover excess rent alleged to have been charged for the occupancy of certain premises located at 215 N. Boulevard, Tampa, Florida, together with penalties, a reasonable attorney's fee and costs.

2. The evidence in the case shows that on the Rent Freeze Date (in this case, March 8, 1942), apartment No. 22 in the apartment house in which the above premises are located was rented for $32.50 per month. This apartment consisted of a living room, bedroom, bath, dinette and kitchen. These premises were registered at this rental on the effective date of rent control, October 1, 1942, with the Office of Price Administration and $32.50 per month continued to be the rent charged for the premises until September 15, 1944, when the premises were divided into two rental units and new registrations were filed with the Office of Price Administration.

The new registrations registered apartment No. 22, consisting of a living or bedroom, dinette and kitchen and the right to use the bathroom jointly with tenant occupying room No. 22, at a rental of $30 per month. Room No. 22 was registered as a separate and independent unit, except sharing of the bathroom with the tenant occupying apartment No. 22, as a hotel bedroom, at a rental of $9 per week. This registration provided for maid service, linen service and other usual services provided for a hotel bedroom. The new registrations were accepted by the Office of Price Administration and allowed to become effective September 15, 1944. Other apartments in the apartment building were also registered on the same basis.

216

3. On October 9, 1944, plaintiff rented a hotel bedroom in another part of this apartment building, paying $8 per week for the use of this room. On October 15, 1944, apartment No. 22 and room No. 22 became vacant and plaintiff, desiring more space than the premises then occupied provided, rented both apartment No. 22 and room No. 22, agreeing to pay therefor $30 per month for apartment No. 22 and $8 per week for room No. 22.

Plaintiff occupied these premises for a period of ten months and paid $620 for the use of both premises. Plaintiff now claims that he should have been charged $32.50 per month (freeze date rental) for the use and occupancy of both units, totalling $325, and that he was charged $295 above the freeze date ceiling rental and seeks to recover in this suit three times this amount, plus reasonable attorney's fee and costs.

4. Plaintiff's right to recover resolves upon (1) the legality of the September 15, 1944, registrations of these premises as two rental units and (2) whether these registrations are controlling in this case and applicable to plaintiff. As plaintiff's counsel stood first upon the second of these contentions the facts relative to the second contention will be first set out in these Findings of Fact.

5. As pointed out above the evidence shows that apartment No. 22 in the above described apartment building was rented for $32.50 per month on the rental freeze date and these premises were registered at this rental with the Office of Price Administration on October 1, 1942, the effective date of rent control in the Tampa Rent Area. The evidence further shows the premises were divided into two rental units and new registrations were filed with the Office of Price Administration on September 15, 1944, and that the Office of Price Administration accepted and permitted the new registrations to go into effect as of that date. The evidence further shows that when plaintiff rented apartment No. 22 and room No. 22 on October 16, 1944, the new registrations were exhibited to him and he agreed with the defendant to pay rentals for the two premises in accordance with these registrations and did pay rentals in

accordance therewith throughout his occupancy of the premises.

Plaintiff and his counsel admitted that the September 15, 1944, registrations were valid, but contend that the landlord did not have the right to rent both units to a single tenant under the September 15, 1944, registrations, even though the tenant needed and wanted the use and occupancy of both units and was willing to pay the rentals provided on September 15, 1944, registrations. The contention is that when one tenant occupied both premises the ceiling rental effective on the freeze date ($32.50) became applicable and controlling and that this is true even though the registrations of September 15, 1944, contain no provisions prohibiting the leasing and occupancy of both premises by a single tenant, and the landlord continued to furnish hotel service for room No. 22 as provided in the September 15, 1944, registrations for the use and occupancy of this room, as a hotel bedroom.

Plaintiff relies upon an interpretation found on Page No. 42 of "Rent Regulations for Housing with Official Interpretations," as follows:

"Interpretation 4(c)–II. Application of Section 4(c) of the Housing Regulation to New Dwelling Units; Reversion to Rent Determined Under Section 4(a) Where Unit Rented on Maximum Rent Date is Again Rented.

"Assumed that the maximum rent date is March 1, 1942, and the effective date of the Housing Regulation is July 1, 1942.

"On May 1, 1941, L leased a house to T for one-year term at $50 per month. T occupied the downstairs and on December 1, 1941, sublet the upstairs to S for $30 a month. The premises were rented in this manner on March 1, 1942. When T's lease expired he vacated, whereupon, on May 1, 1942, L rented the upstairs to S for $40 a month and the downstairs to X for $40 a month. The premises were rented in this manner on July 1, 1942.

"The maximum rent for the downstairs is $40 a month under Section 4(c) of the Housing Regulation. The maximum rent for the upstairs is $30 a month under Sec-

tion 4(a). The maximum rent for the entire house is $50 a month under Section 4(c).

"The upstairs was rented on March 1, 1942, and the maximum rent for this dwelling unit is established by the rent on that date. The downstairs was first rented as a separate dwelling unit on May 1, 1942, and the maximum rent is established by the first rent under Section 4(c). This rent is subject to decrease by the Rent Director under Section 5(c) (1) if it is higher than the rent generally prevailing in the defense-rental area for comparable accommodations on March 1, 1942.

"The entire house was rented as a unit on the maximum rent date for $50 a month and this is the maximum rent for the house. If at a later date L again rents the entire house as a unit, the applicable maximum rent will be $50 a month.

"(Issued November 6 and December 1, 1942; revised May 15, 1943, and July 1, 1945.)"

The court overruled this contention of plaintiff and held that the plaintiff had the right to rent and occupy both premises at the rental provided in the September 15, 1944 registrations, if plaintiff desired so to do, and as he testified was his desire when he rented the premises.

6. After the court had overruled the above contention, plaintiff then undertook to prove, by an employee in the Tampa Area Rent Office, that the Office of Price Administration had rejected the registrations of September 15, 1944, and offered in evidence copy of a letter from the Office of Price Administration to A. J. Simms Co., Rental Agents for defendant, under date of December 15, 1944, rejecting said registrations on the ground that these registrations were void and not permissible under the rent regulations then in effect. The offer of a carbon copy of this letter was objected to on the ground that the purported letter was never sent A. J. Simms. Co., that the officials of the Office of Price Administration were fully aware of that fact, and that the letter should not be received in evidence until it was shown that the letter was actually sent. During the heated controversy between counsel for the parties over this matter, it developed that the person who wrote the letter had been subpoenaed and was present as witness in the case. Whereupon the court called this person to the stand as its own witness to settle this controversy. The witness testified that he wrote the letter, copy of which had been offered in evidence, but that it was not sent by the then acting Area Rent Director for the reason the Director was in doubt as to the invalidity of the registrations.

The employee of the Tampa Area Rent Office, through whom plaintiff had sought to prove the September 15, 1944, registrations had been rejected by the Office of Price Administration was then called back to the stand and this employee testified that the September 15, 1944, registrations were filed with and accepted by the Office of Price Administration, but that they were not properly accepted by the then acting Rent Control Administrator. As this testimony merely represented witness' opinion, the court stopped further testimony along this line.

7. The record shows that no action had been taken by the Office of Price Administration to correct the alleged erroneous approval of these registrations. The evidence in the case further shows that no action was taken during the tenancy involved herein by the Administrator or the tenant under Section 5(c) (3) of the Rent Regulation for Housing, to effect a reduction in the rental of the premises and that no Order rejecting the schedules of September 15, 1944, or reducing the rentals therein provided, has ever been entered by the Office of Price Administration.

## Conclusions of Law

1. The Court finds that it has jurisdiction of the parties and of the subject matter of this suit.

2. The action of the Office of Price Administration in permitting to be filed and to become effective, the rent schedules filed with it on September 15, 1944, is binding upon this court and is not here subject to review. If it was a mistake to let them be filed and is a mistake to let them continue in effect, the obligation rests upon the Office of Price Adminis-

tration to correct same, and this Court is without authority to correct the mistake. See Bowles v. Griffin, 151 F.2d 458, decided by the U. S. Circuit Court of Appeals, for the Fifth Circuit, October 23, 1945.

3. As the registrations of the two units in question, of September 15, 1944, contain no provision prohibiting the occupancy of both units by one tenant the court holds that one tenant had the right to rent and occupy both units at the rental specified in said schedules on file with the Office of Price Administration. As the evidence shows, he voluntarily exercised this right, he is estopped to complain under the facts of this case as disclosed by the evidence. The interpretation replied upon by plaintiff is not controlling here. Plaintiff rented two dissimilar units not registered under or subject to the same regulations. The fact that both units had been previously rented as a single unit is not, in and of itself, sufficient to revive the original registration merely because both units were again rented to one tenant, where, as here, the units as rented were not registered under or subject to the same regulations.

4. The court holds that plaintiff is not entitled to recover and Judgment will be entered for the defendant.