PETERS v. PORTER, Price Administrator.
No. 299.

United States Emergency Court of Appeals.

Heard at Philadelphia May 3, 1946.
Decided Sept. 4, 1946.

C. Laurence Cushmore, Jr., of Philadelphia, Pa., for complainant.

Betty L. Brown, Atty., Office of Price Administration, of Washington, D. C., (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, Harry H. Schneider, Chief, Court Review Rent Branch, and Philip Travis, all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

This complaint draws into question the validity of an order issued under §§ 4(e) and 5(c) (1) of the Rent Regulation for Housing decreasing the maximum rent of complainant's 4-room housing unit from $40 to $25, effective retroactively to October 1, 1943.

The facts are in somewhat of a tangle due to many confusing and contradictory statements made by or on behalf of complainant in the course of the proceeding. We do not doubt complainant's entire good faith, however. A simplified summary of the facts is all that is needed to explain our disposition of the case.

The premises in question are located in Philadelphia, Pennsylvania, and originally consisted of a store and three smaller rooms designed for living quarters. On March 1, 1942, the freeze date for that area (8 F.R. 7322, 7332), the property was owned by complainant, but was rented to W. Adolph Peters, Inc., a corporation in which complainant was one of the stockholders, at a rental of $50 per month. At

that date the corporation was occupying only the store portion, the dwelling portion being vacant.[1] Subsequently, the corporation vacated the premises, and thereafter a lease was executed between the complainant and one Joseph Huffer, which lease provided for the occupancy of the premises by Huffer, as a store and dwelling commencing September 1, 1942. Anticipating the commencement of this new tenancy, complainant, on August 15, 1942, filed a registration statement in which Huffer's name appeared as tenant; and in which, under item 7 of Section C, the maximum legal rent for the dwelling unit was stated to be $50 per month. The dwelling unit was identified as being the first floor of 2838 W. Lehigh Avenue, Philadelphia, and the number of rooms was stated to be "3 & store."

On or about May 1, 1943, Huffer ceased to use the store room for commercial purposes, and apparently began to use it for dwelling purposes, though no structural changes were made in it at that time.

Some time in June, 1943, the whole of the premises, including what had formerly been the store room, was rented to John J. Rojansky for dwelling purposes exclusively. Immediately upon the commencement of Rojansky's term, complainant, in order to make the store room available for residential purposes, removed counters, shelving and other fixtures, removed and reset the partition wall, changed electric fixtures and relocated outlets, and papered and painted the room. The rent charged remained at $50 a month.

In June, 1944, complainant rented the premises as an apartment to a Mrs. O'Sullivan at a reduced rental of $40 per month.

On December 26, 1944, the Area Rent Director wrote to the complainant requesting him to file a new registration statement for the converted 4-room housing unit.

Complainant complied with the Rent Director's request and, on January 15, 1945, filed a new registration statement, in which the converted apartment was stated to have been first rented in June, 1944, at $40 per month.

The Rent Director, under date of May 18, 1945, notified complainant that he had initiated a proceeding under § 5(c) (1) of the regulation to decrease the maximum rent from $40 per month to $25 per month, on the assumption that $25 per month was the rent generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date. The outcome of this proceeding was an order by the Rent Director issued May 25, 1945, decreasing the rent for the housing unit to $25 a month effective retroactively to June 1, 1944, and directing the landlord to refund to the tenant any rent in excess of $25 per month received on or after June 1, 1944. This date, June 1, 1944, was taken as the effective date because the Rent Director was under the impression, derived from a recital in the new registration statement, that the apartment, after its conversion into a 4-room dwelling unit, was first rented on that date. This order of the Rent Director was affirmed by the Acting Regional Administrator on August 21, 1945.

On September 20, 1945, complainant filed his protest against the Rent Director's order of May 25, 1945, and the Regional Administrator's affirming order of August 21, 1945. The protest was denied by order of the Administrator issued January 5, 1946, which order modified the order of the Rent Director to the extent of making the reduction retroactive to October 1, 1943, instead of June 1, 1944. In his accompanying opinion, the Administrator explained the modification by pointing out that complainant had in fact first rented the apartment as a 4-room dwelling unit on June 1, 1943, instead of June 1, 1944, as

---

[1] The facts are so stated by complainant in an application to us for leave to introduce additional evidence. We denied the application in view of respondent's expressed willingness, for the purposes of these proceedings, to assume the truth of the matters alleged in complainant's application. In an affidavit which complainant had filed in the protest proceedings, the statement was made that complainant himself as owner of the premises occupied the same as store and dwelling on March 1, 1942, and up to September 1, 1942. Counsel for complainant explains the discrepancy by a confusion in complainant's mind of his own identity with that of W. Adolph Peters, Inc.

the Rent Director had supposed; and that, under the provision of § 4(e), the reduction in that case should be made retroactive to October 1, 1943. The retroactive feature of the order will be discussed later in this opinion.

■ On brief and oral argument before us, complainant has contended that he had an established maximum rent date rental of $50 per month for the premises under § 4(a) of the regulation, and that a maximum rental so established is not subject to reduction to the level of comparability under § 5(c) (1). The short answer to this contention is that it is not open in this court, in view of § 204 (a) of the Act which forbids us to consider any objection not set forth by complainant in his protest, 56 Stat. 31, 50 U.S.C.A.Appendix, § 924(a). In a letter to the Regional Administrator dated September 19, 1945, counsel for complainant stated that the premises were first rented on September 1, 1942, and that technically "the matter is a first renting after the freeze date and comparability is a proper criterion in determining the maximum rent". The same position was maintained in the protest proceedings. Complainant's protest stated that the premises were first rented on September 1, 1942. (As stated above, the maximum rent date for this area was March 1, 1942.) In an affidavit filed in the protest proceeding, complainant stated that he as owner of the premises occupied the same as store and dwelling on March 1, 1942, and up to September 1, 1942. Complainant is bound by the issues as he presented them in the protest proceeding. It is now too late for him to urge that the rent was not subject to reduction even though it might have been higher than the rent generally prevailing on the freeze date for comparable accommodations.[2]

■ Upon the question whether the reduction of the maximum rent to $25 per month was appropriate in amount under the standard laid down in § 5(c), we state our conclusion that there is substantial evidence in the record warranting the Administrator's finding, which therefore must be accepted by us. Sirianni v. Bowles, Em.App., 1945, 148 F.2d 343.

■ We think, however, that the reduction order of the Rent Director should not have been made retroactive.

On May 18, 1945, when the proceeding under § 5(c) (1) was initiated by the Rent Director, the second paragraph of § 4(e) of the regulation contained the following provision:

"If the landlord fails to file a proper registration statement within the time specified (except where a registration statement was filed prior to October 1, 1943), the rent received for any rental period commencing on or after the date of the first renting or October 1, 1943, whichever is the later, shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5(c) (1). Such amount shall be refunded to the tenant within 30 days after the date of issuance of the order. If the Administrator finds that the landlord was not at fault in failing to file a proper registration statement within the time specified, the order

---

[2] As appears in footnote, 1, supra, complainant stated in an application for leave to introduce additional evidence that, on March 1, 1942, the premises were rented to W. Adolph Peters, Inc. Assuming this to be the fact, it would not necessarily follow that complainant had an established maximum rent date rental for the housing unit. If the store part of the premises were deemed to be inseparable from the dwelling portion and the premises were predominantly used for business purposes, the premises as a whole would not have been subject to the rent regulation. If the store and dwelling portions were separable, only the dwelling portion would have been subject to the rent regulation, and there would have had to be a determination by the Rent Director under § 5(d) of how much of the total rent was fairly and reasonably to be allocated to the dwelling portion. See OPA Rent Interpretation 1(a)—I, Pike & Fischer OPA Service, p. 200:851. This somewhat complicated matter was not considered by the Administrator in the protest proceeding because in that proceeding complainant did not claim to have had an established maximum rent date rental for the premises.

under section 5(c) (1) may relieve the landlord of the duty to refund. * * *"[3]

Section 7, containing the registration requirement, stated (8 F.R. 7327):

"On or before the date specified in Schedule A of this regulation, or within 30 days after the property is first rented, whichever date is the later, every landlord of housing accommodations rented or offered for rent shall file in triplicate a written statement on the form provided therefor to be known as a registration statement. * *"

It was under these provisions of the regulation that the Rent Director made the reduction retroactive and ordered a refund of the excess rentals collected in the interim. The ground was that, when complainant converted the apartment from a 3-room unit to a 4-room unit by adapting the store room to dwelling purposes, this constituted the creation of a new housing accommodation within the meaning of § 4(e) (3), and that complainant failed to file a new registration statement within 30 days after the first renting of such new housing accommodation, as required by § 7. The position thus taken by the Rent Director was based upon an interpretation by the Administrator of the analogous provision of § 4(c). See Rent Interpretation 4(c)—I, Pike & Fisher OPA Service, p. 200:1221.[4]

It will be noted from the quotation above of the second paragraph of § 4(e) that the Rent Director is not required to make the reduction of maximum rent retroactive if he finds "that the landlord was not at fault in failing to file a proper registration statement within the time specified." The Rent Director, and the Administrator in the protest proceedings, both failed to make any finding as to complainant's fault or lack of fault in failing to file the new registration statement on time. It is ob-vious from the record, however, that complainant was not at fault in failing to file a new registration statement within 30 days after converting the apartment into a 4-room dwelling in June, 1943, because, if the regulation did require the filing of a new registration statement in the circumstances stated, such requirement was so concealed in the language of the regulation as not to be apparent to a landlord of reasonable intelligence.

The first paragraph of § 4(e) stated the circumstances under which the first rent charged after the effective date of the regulation became the maximum legal rent. The provision read as follows (8 F.R. 7324):

"(e) First rent after effective date. For (1) newly constructed housing accommodations without priority rating first rented on or after the effective date of regulation, or (2) housing accommodations changed on or after such effective date so as to result in an increase or decrease of the number of dwelling units in such housing accommodations, or (3) housing accommodations not rented at any time during the two months ending on the maximum rent date nor between that date and the effective date, the first rent for such accommodations after the change or the effective date, as the case may be, but in no event more than the maximum rent provided for such accommodations by any order of the Administrator issued prior to September 22, 1942. Within 30 days after so renting the landlord shall register the accommodations as provided in section 7. The Administrator may order a decrease in the maximum rent as provided in section 5(c)."

Complainant's situation did not come within § 4(e) (2) above, because the conversion of the store room did not result in an increase of the number of dwelling

---

[3] As amended by Amendment No. 48 issued February 28, 1945 (10 F.R. 2401).

[4] "Within the category of housing accommodations which were not rented on the maximum rent date and which were first rented between the maximum rent date and the effective date should be included accommodations which have been enlarged by substantial additions of space for dwelling purposes, provided the additional space is usable and is in fact used as part of the same dwelling unit. Such a situation could not be governed by Section 4(d) (2) of the Housing Regulation, which provides for change through increase or decrease in the number of dwelling units. In the case supposed the number of dwelling units remains the same but the particular unit is altered through addition of space. The same principles would apply to a substantial decrease in space."

units. The Administrator's contention is that the conversion resulted in the creation of a new housing unit, and hence brought the case within § 4(e) (3) above. To say the least, this is not obvious, especially in view of the fact that the phraseology of § 4(e) (2) lends itself to the implication that, if the change in the housing accommodation does not result in an increase or decrease in the number of dwelling units, the change is not within the purview of § 4(e). But, accepting for the ordinary case the Administrator's view that the enlargement of accommodations by substantial additions of space for dwelling purposes constitutes the creation of a new dwelling unit within the meaning of § 4(e) (3), it is even less obvious that this would apply to the unique situation in the case at bar. The whole of complainant's premises, including the store room, had already been rented as a unit, and had been covered by a registration statement filed August 15, 1942. The demised premises were not enlarged by the change in June, 1943. The conversion of the store room was no more than a re-adaptation of the same space already under lease. We do not see how complainant could have been expected to understand that he was required to file a new registration statement after such change until he was requested to do so by the Rent Director on December 26, 1944. This is especially true in view of the registration provision of § 7, which requires the filing of a registration statement "within 30 days after the property is first rented." The landlord would naturally assume that the "property" referred to was the premises as a whole, including the store room, which had been rented as a single unit to Huffer on September 1, 1942.

Therefore, under the peculiar circumstances of the case, and giving weight to the saving provision of the second paragraph of § 4(e) covering the situation where the landlord was not at fault in failing to file a registration statement on time, we deem the challenged orders to be arbitrary and unwarranted in so far as they made the reduction of maximum rent retroactive.

A judgment will be entered setting aside the order of the Area Rent Director issued May 25, 1945, the order of the Regional Administrator issued August 21, 1945, and the order of the Price Administrator issued January 5, 1946, insofar as said orders reduced the maximum rent retroactively to a date earlier than the date of the Rent Director's order.