**WOODS, Housing Expediter, v. DODGE.**

No. 4367.

United States Court of Appeals
First Circuit.

Nov. 23, 1948.

Nathan Siegel, Sp. Litigation Atty., of Washington, D.C. (Ed Dupree, Gen. Counsel, Hugo V. Prucha, Asst. Gen. Counsel, and Daniel R. Davies, Sp. Litigation Atty., all of Washington, D.C., on the brief), for appellant.

Charles E. Cunningham, of Boston, Mass. (Herbert S. Avery and Avery, Dooley, Post & Carrol, all of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and GOODRICH and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by the Housing Expediter from a final judgment entered by the District Court of the United States for the District of Massachusetts for a landlord in an action for restitution and statutory damages brought by the Expediter pursuant to § 205(a) and (e) of the Emergency Price Control Act of 1942, as amended, 50 U.S. C.A.Appendix, § 925(a) and (e). The basic facts are not in dispute.

The defendant on September 11, 1946, and apparently for some years before, owned premises located at 429 Pleasant Street in Winthrop, Massachusetts, which included an apartment known as Suite No. 2, concededly a housing accommodation, equipped for central heating by a coal burning furnace. Prior to the above date the suite had been rented unfurnished and a maximum legal rent had been established therefor. On the date mentioned the defendant accepted $150 from the agent of a prospective tenant on account of rent for the suite for the month beginning on September 13, 1946, provided the prospective tenant furnished satisfactory references. On September 16, the prospective tenant and the defendant met and executed a lease of the suite for one year beginning September 13, 1946, at $150 per month payable in advance. Under the terms of the lease the defendant-lessor was not obligated to provide heat. Perhaps upon the day the lease was signed, maybe even in discussion with the tenant's agent on September 11, but at any rate shortly after September 16, there was some discussion with respect to equipping the coal burning furnace in Suite No. 2 with an oil burner. In any event the tenant wanted an oil burner very much if it were possible to obtain one and have it installed, and the defendant, having one on order for his own personal use, agreed for an additional charge of $17.50 per month to have that burner put in the tenant's furnace if it came and someone could be found to install it. The defendant was able to obtain an oil

burner and have it installed, and on September 24, he and his tenant embodied their agreement with respect to it in a separate written instrument. Thereafter the tenant paid and the defendant received $17.50 per month, in addition to the agreed rental of $150 per month for the suite, to cover the use of the oil burner from September 13, 1946, through May 12, 1947. These amounts, aggregating $140, constitute the overcharges alleged.

We were informed at oral argument that the landlord, within thirty days as required by the regulation, filed a registration statement setting out the first rental of the suite, furnished, as $150 per month; also that still within the thirty days, he filed an amended registration statement setting out the first rental of the suite furnished and equipped with an oil burner as $167.50 per month. The registration statement is merely a reporting device. If the "first rent" of the apartment after the change from unfurnished to furnished had in fact been $167.50, then the amended registration statement would have been in order. But as indicated below, though the landlord's good faith is not questioned, the amended registration statement did not accurately set forth the information required to be reported by the regulation.

We agree with the District Court that "This is a most extraordinary litigation brought by the Expediter to penalize a landlord for having made an agreement that he did not wish to make, not for his profit, and at the request of a tenant, who so far as appears was in no way adversely affected, and who sought the agreement of which complaint is made." But we cannot adopt that court's theory that the agreement with respect to the oil burner was one with respect to personal property "in no way tied in with or connected with the rental of the real property", made by a person who happened to be a landlord with a person who happened to be his tenant, and hence that it was an agreement not subject to the provisions of the Emergency Price Control Act of 1942, as amended.

Section 302(f) of the Act, 50 U.S.C.A.Appendix, § 942(f), and likewise § 13(a) (6) of the Rent Regulation for Housing define "housing accomodations" as including not only buildings, structures or parts thereof rented or offered for rent for living or dwelling purposes, but also "all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property", and there can be no doubt that the use of the oil burner was either a privilege, or else a furnishing or facility "connected with the use" of Suite No. 2. Nor can there be any doubt that the "first rent" charged for the suite, furnished, which under § 4(j) of the Rent Regulation established the maximum legal rent chargeable for it unless and until changed by the Expediter, was $150 per month.

This was the amount of the rent first agreed upon by the tenant and the defendant for the suite, furnished, and the agreement with respect to the rent for the suite, furnished and equipped with an oil burner, came later. Installation of the oil burner no doubt constituted an increase in the furnishings, equipment or services provided by the landlord to his tenant, and so provided a ground for application by the landlord to the Expediter for an upward adjustment of the rent pursuant to § 5(a) (3) of the Rent Regulation for Housing. But installation of the burner did not justify the defendant in increasing the rent without authority from the Expediter. Cf. Thierry v. Gilbert, 1 Cir., 147 F.2d 603; Elma Realty Co. v. Woods, 1 Cir., 169 F.2d 172. The provisions of the Regulation are explicit and applying those provisions to the conceded facts the Expediter's case is established.

The judgment of the District Court is set aside and the case is remanded to that court for further consistent proceedings.