**LEIBMAN v. SIEGEL et al.**

No. 9601.

United States Court of Appeals
Seventh Circuit.

March 21, 1949.

936

Albert E. Jenner, Jr. and Edward H. Hatton, both of Chicago, Ill., for appellants.

David M. Jacobson and Ralph E. Jacobson, both of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, KERNER, Circuit Judge, and LINDLEY, District Judge.

MAJOR, Chief Judge.

This is an action by plaintiff, a tenant, against the defendants, landlords, for the recovery of damages and attorney fees for alleged violation of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A.Appendix, § 925(e), and certain regulations promulgated thereunder. The damages sought to be recovered are for an overcharge alleged to have been made by the defendants by the sale to the plaintiff of furniture for the sum of $1500, in connection with and as a condition to the leasing of an apartment. The court below made findings of fact, conclusions of law and, on February 25, 1948, entered a judgment in favor of the plaintiff in the sum of $3000, and in addition thereto, assessed $500 as plaintiff's reasonable attorney fees.

Upon appeal by the defendants, this court affirmed the judgment in an opinion announced November 24, 1948. Further consideration of the case on petition for rehearing has convinced us that the judgment must be reversed. Our previous opinion is, therefore, withdrawn, and all orders entered pursuant thereto are vacated and set aside.

Sec. 925(e), upon which the instant action is predicated, provides: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity * * * may * * * bring an action against the seller *on account of the overcharge.* * * * For the purposes of this section the payment or receipt of rent * * * shall be deemed the buying or selling of a commodity, as the case may be; and *the word 'overcharge' shall mean the amount by*

KERNER, Circuit Judge, dissenting.

*which the consideration exceeds the applicable maximum price."* (Italics ours.)

■ We are thus at once confronted with the perplexing issue as to whether a legal maximum rental existed for the apartment in question at the time of the alleged overcharge sought to be recovered. This issue was not previously decided by this court and it appears was given no more than incidental consideration in the court below. The importance of the issue is apparent from the fact that if decided adversely to the plaintiff no recovery can be had, and it must be kept in mind that the burden is upon the plaintiff to establish the affirmative of this issue as a prerequisite to his right to recover. See Porter, etc. **v.** Kenmore Mfg. Co., 7 Cir., 161 F.2d 123.

The defendants were the owners of an apartment (housing accommodation) which they inherited on October 12, 1946, upon the death of their mother, who previous to her death had occupied the apartment as the owner. The court below found that the defendants on December 18, 1946, agreed with the plaintiff that they would lease the apartment in question to the plaintiff "at a rental of $45.00 per month, which said rental was the maximum rent for said dwelling unit, but as a condition precedent to the said leasing of the said apartment, required the plaintiff to purchase the furniture then in said premises for the sum of Fifteen Hundred ($1500.00) Dollars and the plaintiff, pursuant to the demands and requirements of the defendants, paid over the sum of $1500.00 to the defendants who accepted and received said sum as a condition to the leasing of the said apartment." The court also found that the transaction was "through the subterfuge and scheme of selling furniture located in said apartment and said sum was in excess of the maximum legal rents * * *." And the court further found that the defendants "did not obtain the written consent of the Administrator approving the sale of said furniture as a condition upon the leasing of said apartment." The court concluded as a matter of law that the defendants had violated the Act and the Regulations promulgated thereunder and awarded judgment in favor of the plaintiff.

■ The court's finding that defendants on December 18, 1946 sold the furniture to the plaintiff as a condition precedent to the leasing of the apartment and that they did so without the consent of the Administrator is amply supported by the record and must be accepted. But the validity of the finding that $45 per month "was the maximum rent for said dwelling unit" on December 18, 1946, furnishes the basis for the instant controversy. On what theory the court made this finding is not shown; moreover, we think it is more in the nature of a conclusion of law than one of fact.

■ It is conceded that no maximum rental had been established for the apartment prior to December 18, 1946, because it had been owner-occupied by the mother of the defendants to the date of her death on October 12, 1946, and in the interim between that date and December 18, 1946, although owned by the defendants, had remained vacant.

On the date involved there was in effect Par. 4(e), 8 F. R. 7324, of the Regulations, which provided the means of determining the first maximum legal rent. See Peters v. Porter, Em.App., 157 F.2d 186, 189. This Regulation, insofar as here pertinent, provides: "Section 4. Maximum Rent. Maximum rents * * * shall be: (e) First rent after effective date. For * * * (3) Housing Accommodations not rented at any time during the two months ending on the maximum rent date (March 1, 1942) nor between that date and the effective date (July 1, 1942), the first rent for such accommodations after the change or the effective date as the case may be, but in no event more than the maximum rent provided for such accommodations by any order of the Administrator issued prior to September 22, 1942. Within 30 days after so renting, the landlord shall register the accommodations * * *."

Thus, a solution to the question under discussion depends upon the meaning to be attributed to "the first rent for such accommodations." Does it refer to the time when an offer or promise to lease is made by the landlord, which is the situation in the instant case, or to the time when the first rent is received by the landlord?

The record discloses without controversy that no lease was executed on December 18, when the furniture was sold, which is consistent with the court's finding that the defendants agreed that they "would lease" the apartment. We have read the testimony of the witnesses and the most which it shows is that the defendants on December 18, at and in connection with the sale of the furniture, offered to lease the apartment to the plaintiff for a term commencing January 1, 1947, at $45 per month. In a memorandum signed by the plaintiff on December 17, 1946, it is stated, "I expect that you will lease this apt. to me at $45.00 per mo. beginning Jan. 1st, 1947 for 1 yr. (Rental subject to be approved by O.P.A.) * * * I agree to execute lease accordingly if accepted as tenant." It is true one of the defendants testified that after she received the $1500 check in payment for the furniture, the keys to the apartment were delivered to the plaintiff and that plaintiff took possession. However, no rent was paid by the plaintiff for the period from December 18 to January 1, and it was on the latter date that the defendants received the first month's rental. It is also shown that the defendants later refused to give plaintiff a written lease as promised, for reasons not here material.

The Regulation heretofore quoted required the defendants to register the accommodation with the Administrator within thirty days "after so renting," and in compliance therewith defendants registered the accommodation at $45 per month on January 29, 1947. This rental has never been challenged by the Administrator acting under the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., or the Housing Expediter acting under the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq. If December 18, 1946 is determined as the date of the "first rent for such accommodations," the registration was not in compliance with the Regulation because it was not registered with the Administrator within thirty days. It was, however, registered within thirty days of January 1, 1947, and the fact that it was not challenged by the Administrator would indicate a recognition of January 1, 1947, when the first month's rent was received by the defendants, as the "first rent for such accommodations."

We find no case where the precise question before us has been decided, although that of Woods v. Dodge, 1 Cir., 170 F.2d 761, is similar. There, the accommodation in question was a furnished apartment on which no maximum rental had been fixed as it had previously been rented unfurnished. On September 11, 1946, the landlord accepted from the tenant $150 on account of rent for the month beginning September 13. On September 16, a lease was executed for one year beginning September 13, at $150 per month, payable in advance. Shortly after September 16, the landlord agreed to and did install heating equipment and increased the rental to $167.50 per month, which thereafter was paid by the tenant. The landlord within thirty days filed a registration of the first rental at $150 per month, and again within the thirty days filed an amended registration showing the rental to be $167.50 per month. The court held that it was the $150 per month rental which determined the legal maximum. In this connection, the court stated, 170 F.2d at page 763, "The registration statement is merely a reporting device," and that the landlord in order to obtain an increase must make application to the Expediter. The court on the same page also stated, "Nor can there be any doubt that the 'first rent' charged for the suite, furnished, which under § 4(j) of the Rent Regulation established the maximum legal rent chargeable for it unless and until changed by the Expediter, was $150 per month." We understand the court to use the word "charged" in the same sense as "paid," because the rent held to determine the maximum was paid at the same time that it was agreed upon.

Plaintiff's argument in support of his contention that a maximum rent was established and in existence at the time of the furniture sale is not convincing. It is argued that the defendants by their answer "admitted they promised plaintiff a lease at $45.00 per month." The exact language of the answer is, "Plaintiff was promised a one-year lease from January 1, 1947 to December 31, 1947 at $45.00 per month rental, subject to approval by the

Office of Price Administration." As already shown, there is no finding and no proof that any rental was to become effective on December 18, 1946. The defendants did nothing more than promise a lease to become operative in the future at a designated rental.

Certain definitions contained in the Regulation are inconsistent with plaintiff's contention. Sec. 13(a) (8) provides, "'Landlord' includes an owner * * * or other person receiving or entitled to receive rent for the use or occupancy of any housing accommodations * * *." It appears certain that defendants did not receive any rent from the plaintiff on December 18, nor were they entitled to receive rent under their agreement to lease prior to January 1, 1947. Sec. 13(a) (9) defines the term "Tenant" as a person "entitled to the possession or to the use or occupancy of any housing accommodations." It seems equally apparent that plaintiff was not under the terms of the agreement with the defendants on December 18, 1946 entitled either to the possession, use or occupancy of the apartment. (We think this is true notwithstanding that defendants permitted the plaintiff as a matter of grace to occupy the apartment without the payment of rent from December 18, 1946 to January 1, 1947.) Sec. 13 (a) (10) defines "Rent" as meaning the "consideration * * * demanded or received for the use or occupancy of housing accommodations * * *." It is also plain that the defendants on December 18, 1946 neither demanded nor received any consideration in the form of rent for the use or occupancy of the apartment. By agreement of the parties and in accordance with what subsequently transpired, the receipt of rent did not take place until January 1, 1947. Of course, it may be claimed, and no doubt properly so, that the $1500 received for the furniture was a part of the consideration received by the defendants, but this amount represents the overcharge sought to be recovered and cannot be considered as the base rental which is determinative of the maximum legal rent as a prerequisite to a determination as to whether any overcharge was made.

Plaintiff in attempting to meet this situation also argues that it was not necessary to make proof as to the maximum legal rent. The brief states, "This type of cause of action does not depend upon the existence of an established maximum rental on a given date." This argument is predicated upon Sec. 9-B of the Regulations, which so far as here material is the same as Regulation 8, which we considered and discussed in Small v. Schultz, 7 Cir., 173 F. 2d 940, in an opinion filed simultaneously with this opinion. What we said there is equally applicable here and need not be reiterated. It is sufficient to note that a landlord's requirement that a tenant purchase furniture as a condition to the renting of a housing accommodation without the prior consent of the Administrator, while a violation of the Regulation, does not authorize recovery by the tenant in a civil suit for damages. Such a suit must rest upon the statutory provision which authorizes an action against the landlord for an overcharge. The overcharge relied on in the instant case is the amount the plaintiff paid for the furniture but, obviously, such payment could not constitute an overcharge in the absence of a maximum legal rental in existence at the time. No such maximum legal rent having been fixed or in existence at that time, there can be no recovery.

The judgment is, therefore, reversed, with directions to dismiss the complaint.

KERNER, Circuit Judge (dissenting).

I am of the opinion that under §§ 925(e) and 942(f) and (g) of the Act, the apartment became subject to control when it was offered for rent on December 18, 1946, and that everything that was done by the parties thereafter was a part of the rental transaction. Hence, the exaction of $1,500 for the furniture constituted a bonus in addition to the $45 a month established as the maximum rental by subsequent registration. The cause should be reversed and remanded for a new trial in accordance with our ruling in Small v. Schultz, supra.