### THOMAS v. UNITED STATES.
#### No. 4672.

United States Court of Appeals
First Circuit.
Dec. 19, 1952.

tion by overcharging the tenant, one William E. Rust, in the aggregate sum of $641 over the period October 1, 1948, to October 31, 1951. The district court entered judgment under § 206(b) of the Act, enjoining further violations, and directing restitution to the tenant of the total amount of the overcharges. Further, the judgment of the court, responsive to a prayer in the complaint, awarded statutory damages to the United States under § 205 of the Act, in the sum of $267.20, which sum was two times the amount of the overcharges made by the tenant within the period of one year prior to February 8, 1952, the date on which the present complaint was filed. Double damages, instead of treble damages, were awarded, because in the complaint the United States waived its right to recover the larger sum in case the court should determine to order restitution to the tenant, under § 205, of the amount of the overcharges during the same period. See Orenstein v. United States, 1 Cir., 1951, 191 F.2d 184, 190–192.

The tenant Rust went into possession of the premises, an apartment in Stoughton, Massachusetts, apparently under an oral lease, on or about October 1, 1948. It is conceded that on that date the lawful maximum rent for the apartment was $30 per month, and so continued until May 1, 1949, when the maximum rent was increased to $33.30, at which figure it remained during the rest of the period in question.

It was found as a fact by the district judge that the defendant demanded and received as rent from the tenant $50 per month during the period October 1, 1948, to October 31, 1951. This finding was supported by the testimony of a compliance negotiator employed in the Office of Rent Stabilization who stated on the stand that the landlord admitted having charged and received from the tenant the sum of $50 per month during the period involved. To the same effect was the testimony of the tenant on direct examination. There was introduced in evidence a written lease of the premises for four years, dated October 4, 1949, executed by Thomas as landlord and Rust as tenant, in which the rent was stated to be $50 per month. For part of the

---

Harry A. Marcus, Stoughton, Mass., for appellant.

David M. Scheffer, Litigation Attorney, Washington, D. C. (Ed Dupree, Gen. Counsel, A. M. Edwards, Jr., Asst. Gen. Counsel, Nathan Siegel, Solicitor, and John A. McLeod, Jr., Washington, D. C., on brief), all of the Office of Rent Stabilization, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal from a judgment in favor of the United States under the Housing and Rent Act of 1947, as amended, 61 Stat. 193, 63 Stat. 18, 50 U.S.C.A. Appendix, § 1881 et seq., upon a finding that the defendant Thomas, the landlord in the case, had willfully violated the rent regula-

period during which the overcharges were made, the tenant was unemployed and was receiving soldiers' relief from the Town of Stoughton. In cross-examination the landlord admitted having received a soldiers' relief check from the Town of Stoughton in the sum of $50 for rent of the premises for the month of October, 1951.

Even on the landlord's own version of the facts, it is clear that he violated the regulation as charged in the complaint. His story is that he originally leased the premises to Rust for $30 per month with the understanding that the apartment would be occupied only by the tenant, his wife and grandson; that shortly after Rust went into possession on October 1, 1948, the landlord discovered that two married daughters of the tenant were also occupying the premises with him. The landlord says that he objected to this additional occupancy, but finally acquiesced in a proposition made by the tenant that "he would collect ten dollars each from the daughters, if that would help out, until they found a place." Thereafter, each month the sum of $50 was handed to the landlord by the tenant's wife for the rent of the apartment. The landlord assumed that $20 of this amount had been collected from the two daughters, in accordance with the agreement.

■ Section 202(e) of the Housing and Rent Act of 1947, as amended, defines the term "rent" as meaning "the consideration, including any bonus, benefit, or gratuity demanded or received for or in connection with the use or occupancy of housing accommodations * * *." The same definition is contained in § 12 of the rent regulation (16 F.R. 12880). It is clear, both under the Act and under the regulation, that a landlord is prohibited from receiving more than the established maximum rental regardless of whether the tenant pays it from his own funds or whether the rental is paid on his behalf by members of his family living with him or not living with him, or by anyone else. See United States v. Tenorio, 10 Cir., 1952, 197 F.2d 905. The regulation does provide, in § 132 (16 F.R. 12885), that where there has been an increase in the number of occu-

pants, this may furnish ground for the landlord to file an administrative application for an increase of the maximum rent. But as we said in Dauksewicz v. United States, 1 Cir., 1951, 194 F.2d 52, 55–56, "once a maximum rent has been established which was initially valid, the rent regulation provides, and lawfully provides, that the landlord may not charge more than that maximum rent without having applied for an upward adjustment and presented to the Housing Expediter the special facts of his case upon which he bases his claim to a higher maximum. If he does make such an overcharge without petitioning for an adjustment he violates the regulation, and so the Act, and becomes irretrievably liable to make restitution, though the facts would have entitled him to a higher maximum rent had he applied for it." If it be a fact, though the record does not establish it, that the extra $20 was actually supplied by the tenant's two daughters out of their separate funds, it might perhaps have been more appropriate for the restitution order under § 206(b) to direct that the landlord make restitution of the overcharges to the two daughters rather than to the tenant. But this is hardly a matter as to which the landlord has any standing to complain.

■ Appellant also urges that the United States is precluded from maintaining its present complaint by virtue of a judgment of the District Court of Southern Norfolk, Commonwealth of Massachusetts, upon a declaration filed by the tenant Rust in that court on February 2, 1952, seeking recovery of overcharges from the landlord. The landlord's reliance, in this respect, is upon the concluding sentence in § 205(c) of the Housing and Rent Act of 1947, as amended, reading as follows: "A judgment for damages or on the merits in any action under either subsection (a) or (b) of this section *shall be a bar to any recovery under the same subsection of this section* in any other action against the same defendant on account of any violation with respect to the same person prior to the institution of the action in which such judgment was rendered." [Italics added.] The United States was not a party to any such proceeding in the state court, and any judg-

ment which the state court might have entered therein could not operate as res judicata as against the United States. See United States v. Sheff, 9 Cir., 1952, 194 F.2d 596. This particular point urged by appellant, at best, could only affect so much of the judgment now under appeal as awarded statutory damages to the United States in the sum of $267.20 pursuant to § 205(a) of the Act, since the above-quoted provision of § 205(c) does not bar a claim by the United States based on § 206(b). But, for the reasons about to be stated, the objection is not good, even as to the statutory damages portion of the judgment. We now state the further facts in the record bearing upon this phase of the case.

■ On or about November 4, 1951, the tenant complained to the area rent office in Boston, Mass., that the landlord had been collecting monthly rentals of $50, and giving receipts for only $30. This complaint stimulated the area rent office to get in touch with the landlord for the purpose of enforcing compliance with the Act and the regulation; and the landlord thus became aware of the risk that he would be faced with an enforcement suit brought by the United States.

It seems that the tenant had failed to make any rental payments for the months of November and December, 1951, and January, 1952. In view of the prior overcharges which the landlord had demanded and received, the district judge found as a fact "that it was impossible for Rust to be actually in arrears in payment of rent on January 31, 1952". Nevertheless, on January 31, 1952, a few days after the landlord had been called into a compliance conference at the area rent office, the landlord's attorney, on behalf of the landlord, sent to the tenant a notice to vacate the apartment within fifteen days because of nonpayment of rent. The district judge found that this eviction notice was sent "in order to frighten the tenant Rust into settling his claim for overcharge in rent against the defendant, Peter Thomas."

The tenant and the landlord met in the office of the landlord's attorney on January 31, 1952, and there signed an agreement of settlement. Under this agreement the landlord credited the tenant for $33.30 per month for November and December, 1951, and January, 1952, the three months in which the tenant was claimed to be in arrears; and furthermore prospectively credited the tenant with payment in full, at the rate of $33.30 per month, for the months of February, March and April, 1952. The total credit to the tenant for these six months thus amounted to $199.80. On the other hand, the tenant transferred to the landlord a $370 oil burner which the tenant had theretofore bought and paid for, except for a balance remaining of $70, which the landlord agreed to assume. On the basis of this agreement the tenant signed a general release, and also signed an Agreement for Judgment and Judgment Satisfied, to be filed later in the District Court of Southern Norfolk. These documents were presumably all drafted by the landlord's attorney. It does not appear that the tenant was represented by counsel at this settlement conference.

Since under the terms of the settlement the landlord received title to an oil burner worth more than the total amount of the six months' rent with which he credited the tenant, it is evident that the tenant took nothing by the settlement on account of the past overcharges. Therefore the district judge found as a fact that the landlord was entitled to no reduction in the amount of $641 overcharges which he was to be directed to restore to the tenant under § 206(b) of the Act.

Further, the district judge found that the tenant acceded to the settlement under duress, since he "was threatened with eviction for non-payment of rent, had no funds and no place to go"; and that the one and only purpose of the settlement, in the form in which it was couched, was "to forestall and attempt to prevent the United States from bringing an action against Peter Thomas for restitution and treble damages."

We agree with the conclusion of the district judge that the agreement of release "was a legal nullity both because of its being contrary to legislative policy and the public interest and because of there being lack of an adequate consideration." See

D. A. Schulte, Inc., v. Gangi, 1946, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114.

On February 2, 1952, the same attorney for the landlord, now in the role of attorney for the tenant, filed in the District Court of Southern Norfolk the tenant's writ and declaration in an action of contract to recover the rental overcharges. On the same day the landlord filed his answer to the tenant's declaration, and the said lawyer filed in the case of Rust **v.** Thomas the following document:

Agreement for Judgment and Judgment Satisfied

And now comes the parties in the above entitled matter and agree to the following entry to be made:

"Judgment for the plaintiff in the sum of one ($1.00) dollar without costs and judgment satisfied."

By (s) William Rust,
*Plaintiff.*

By (s) Peter Thomas,
*Defendant.*

So far as the record discloses, the above document is the final entry in the case of Rust v. Thomas. It is not a judicial act at all, but merely an agreement of the parties for the entry of a judgment. It does not appear that the judge of the District Court of Southern Norfolk ever filed any judgment pursuant thereto or even ever saw the document. This agreement for judgment, as part of the settlement, was just as much a nullity as the settlement itself. We do not mean to suggest that the landlord's case would have been any better if the state court had gone through the formality of entering a judgment pursuant to the agreement. It is sufficient for the purposes of this case to say that there has been no "judgment for damages or on the merits" within the meaning of the above-quoted provision of § 205(c) of the Act, which would be a bar to an action by the United States for statutory damages under § 205 (a) of the Act, the tenant having failed to institute such an action within thirty days from the date of the overcharges.

The judgment of the District Court is affirmed.