DE LA TIERRE
v.
EDMONSON et al.
No. 11101.

United States Court of Appeals,
Seventh Circuit.

July 8, 1954.

Arthur George, Chicago, Ill., for appellant.

Richard K. Cooper, Chicago, Ill., for appellees.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This appeal is from a judgment in favor of the defendants, John and Willa Mae Edmonson, in an action by Daisy De La Tierre for alleged rent overcharges under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A. Appendix, § 1881 et seq.

The complaint alleged that plaintiff had rented from the defendants, for the period June 6, 1952, to April 9, 1953, the second floor premises at 256 West 51st Street in Chicago, Illinois, at a monthly rental of $110. It was alleged further that the maximum legal rent during this period, as fixed by an order of the Housing Expediter, was $45. Damages in the amount of three times the overcharges plus costs and reasonable attorney's fees were prayed for.

The evidence discloses that the premises involved consist of a five room apartment. In May of 1952, at which time this apartment was occupied by a Mrs. Jones, the defendants filed a registration statement listing the rent at $100 per month. By an order of the Housing Expediter, dated June 12, the legal maximum rent was reduced to $45 per month. The plaintiff had paid a rental deposit on June 6, and on July 10 she and a Mr. Green, who had been residing with her in her former home as a roomer, moved into the defendants' apartment. The plaintiff's rent receipts show that from July 10, 1952, through February 10, 1953, the defendants received from the plaintiff as rent $110 per month, and that in March of 1953 they received $80. The plaintiff testified that thereafter she paid $45 per month. The record indicates further that some time after the plaintiff took possession, the defendant filed registration statements indicating that three rooms had been rented to the plaintiff at $15 per week and two rooms to Green at $12.50 per week. The evidence does not disclose that any action was taken by the Housing Expediter with respect

to these registrations. However, in a petition for rehearing on a motion for new trial based on newly discovered evidence, the plaintiff submitted copies of documents in the files of the Housing Expediter tending to show that the registration had been declared false and that on March 23, 1953, the defendants had appeared for a conference with the Area Rent Director and had agreed to make a refund in the amount of $1,665 for rent overcharges.

At the trial below the defendants contended, and the court held, that there had in fact been two separate rental agreements, three rooms having been rented to the plaintiff and two rooms to Green. The court then held that the amounts charged were "first rents" for the two separate rentals, which the defendants registered, and that the failure of the Housing Expediter to take any action on the registrations was in effect a holding that the rents charged were fair and equitable.

Section 4(e) of the Regulations, 24 CFR 825.24(e), upon which the defendants rely to sustain the action of the District Court, provides in part: "Where housing accommodations are changed on or after April 1, 1948, by a substantial increase or decrease in dwelling space, the maximum rent for the housing accommodations resulting from such change shall be the first rent charged after such change * * *." The defendants rely also on Govan v. Municipal Bond & Mortgage Corporation, D.C., 72 F.Supp. 215, involving a situation where an increase in rental had been permitted upon the division of the premises involved into two separate rental units.

We need not consider here the effect of the registrations filed by the defendants purporting to show a division of the apartment into two units, for we think the District Court clearly erred in finding that separate rental agreements had in fact been entered into.

The record shows that the rent receipts signed by one or the other of the defendants, covering the full rent

charged, were issued to the plaintiff and to her alone. Those receipts do not in any way indicate the existence of separate units or of separate rental agreements, nor do they make any allusion whatever to Green's occupancy. The plaintiff testified that she rented "a five-room apartment," and she described it as containing "two front rooms, dining room, middle room, a kitchen and bath." She stated further that she rented the apartment in her own name. Her testimony in this respect contains nothing from which it might be inferred that she did not enter into an agreement to rent the entire five rooms nor that she alone was not responsible for the rental which was charged.

The defendant Willa Mae Edmonson testified that when the plaintiff first inquired about renting the apartment, she "explained to her it was five rooms with bath," but that she told her they "were going to rent three rooms in the front furnished and the two bed rooms in the back furnished." She stated that the plaintiff told her Mr. Green would live there also and share the rent, and she then explained to plaintiff that "the front apartment" would be $15 (per week) and "the rear apartment of the same flat would be $12.50," and after the plaintiff said that they could not pay by the week, she told her "four weeks would be $110.00," and explained it was five weeks sometimes, "and she said that is all right." She stated that later the plaintiff and Green came to look at the apartment together, and she "showed him the rear apartment, and her the front apartment, and they agreed that she could pay me and Mr. Green was to pay her."

Mrs. Edmonson testified further that the space in question was a five room apartment consisting of a living room, dining room, kitchen and two bedrooms. She admitted that she did not at any time give Green any receipts for rent, and further that he did not rent from her, but that "he rented from Mrs. De La Tierre," and that she "knew he was there." She stated that she rented the five room apartment to Mrs. De La Tierre on a monthly basis, and that was how she "made a mistake." When asked if she rented the apartment as separate housing accommodations she said, "For his part and her part." And when asked what was in his part she said, "The bed, a rug on the floor and a chair," thereby clearly showing that she knew he was going to occupy only one bedroom; that he was going to be the plaintiff's roomer in this apartment just as he had been in her former home.

The defendant John Edmonson testified that when the plaintiff and Green looked at the apartment prior to the renting of it, "Mrs. De La Tierre was claiming she only got her money once a month, that she couldn't pay it $110.00, so she asked Mr. Green to share with her * * * and she would be able to pay it." Edmonson testified further that plaintiff said she would collect the money from Green "and pay us $110.00 for four weeks, that was her rental and I gave her a receipt for $110.00."

We think it is clear that the plaintiff alone rented the defendant's five room apartment and that she alone was responsible for payment of the rent charged. It is certain that the evidence does not show a division of the apartment into two separate rental units, nor the existence of separate rental agreements with the plaintiff and Green. At most, it indicates the defendants' acquiescence in plaintiff's wish to have Green reside there with her and an understanding that he would assist her in paying the rent. However, as the court stated in Thomas v. United States, 1 Cir., 200 F.2d 686, 688:

"It is clear, both under the Act and under the regulation, that a landlord is prohibited from receiving more than the established maximum rental regardless of whether the tenant pays it from his own funds or whether the rental is paid on his behalf by members of his family living with him or not living with him, or by anyone else."

■ Whether in these circumstances the defendants might have petitioned successfully for an upward adjustment in the rent, on the ground that there had been an increase in the number of occupants, we do not decide. See 24 CFR 825.25(a)(8). In any event, it is clear that a higher rent could not lawfully have been imposed for that reason without such a petition. Thus, in Dauksewicz v. United States, 1 Cir., 194 F.2d 52, 55–56, the court stated:

"The point is, however, that once a maximum rent has been established which was initially valid, the rent regulation provides, and lawfully provides, that the landlord may not charge more than that maximum rent without having applied for an upward adjustment and presented to the Housing Expediter the special facts of his case upon which he bases his claim to a higher maximum. If he does make such an overcharge without petitioning for an adjustment he violates the regulation, and so the Act, and becomes irretrievably liable to make restitution, though the facts would have entitled him to a higher maximum rent had he applied for it."

In this case a maximum rental of $45 was fixed on June 12, 1952. The defendants did not thereafter receive permission to charge more than this amount, nor were they otherwise lawfully entitled to receive more than the established maximum. They were, therefore, in violation of the Act. See Woods v. Polis, 3 Cir., 180 F.2d 4; Woods v. Macken, 4 Cir., 178 F.2d 510; Woods v. Dodge, 1 Cir., 170 F.2d 761; Elma Realty v. Woods, 1 Cir., 169 F.2d 172; Kalwar v. McKinnon, 1 Cir., 152 F.2d 263; Thierry v. Gilbert, 1 Cir., 147 F.2d 603.

■ The District Court was in error also in concluding that the doctrine of unjust enrichment prevented the plaintiff's recovery in this case. The Act states that any person who receives payment of rent in excess of the prescribed maximum "*shall* be liable", 50 U.S.C.A. Appendix, § 1895(a), (our emphasis), and this section then expressly provides the possible extent of liability. Where an overcharge is shown, as in this case, the court has no discretion to refuse imposition of the statutory sanctions. United States v. Tenorio, 10 Cir., 197 F.2d 905; Creedon v. Olinger, 5 Cir., 170 F.2d 895. Judgment for at least the amount of the overcharges plus reasonable attorney's fees and costs must be entered for the plaintiff.

The judgment of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.