**WOODS et al. v. POLIS.**

No. 10014.

United States Court of Appeals
Third Circuit.

Argued Jan. 17, 1950.

Decided Feb. 17, 1950.

As Amended on Denial of Rehearing
March 13, 1950.

---

Charles Polis, Philadelphia, Pa., for appellant.

Isidore A. Honig, Washington, D. C. (Ed Dupree, General Counsel, Hugo V. Prucha, Assistant General Counsel, Washington, D. C., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal by a landlord from a summary judgment entered by the District Court in an action by the Housing Expediter for injunctive relief and statutory damages under Sections 205(a) and 205 (e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, §§ 925 (a), 925(e). (D.C.E.D. Pa.1949, 84 F.Supp. 385).

The complaint says that under the applicable rent regulations for the Philadelphia area the maximum legal rent for the landlord's premises was the rent received

for them on the freeze date, which was $50 per month. It is alleged that the defendant, between certain named dates, demanded and received a rental of $65 per month, the overcharges in the year preceding the filing of the complaint amounting to $135. Treble damages and injunctive relief are asked for. The landlord's answer denies that the freeze date rental was only $50 per month; it is alleged that the lessees were also required to pay, as "additional rent," certain taxes, fire insurance premiums, water rents and the cost of all repairs. As consideration for a new lease providing for a monthly rental of $65, the landlord says that he waived some $400 worth of repairs and obligations, the cost of which should have been borne by the lessees but which in fact were not.

1. The landlord's first defense, therefore, is that he did not raise rent at all. He says that he did change the cash to be paid from $50 to $65, but that this really was not an increase in rent because the tenant was relieved of some obligations with respect to the leased premises which he, the tenant, had under the former lease. If what the landlord says here raises a disputed question of fact upon a relevant issue there cannot be summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U. S.C.A.

But we do not think that a disputed question of fact of significance for this case is raised. The affidavit of the Regional Director, which is not disputed, says that the registration statement filed indicates $50 per month as the rental price of the premises on the freeze date. That statement is substantiated by a copy of the landlord's registration of the premises. The authenticity of this copy is not disputed. It shows a rent of $50. A portion of the blank shows what services were to be rendered to the premises by the lessor. It says nothing about any obligations by the tenant. We do not think that a landlord can assert one set of obligations between himself and tenant in the registration filed with the Regional Director and another set of obligations more favorable to him in a lawsuit in the federal court.

However, even if there was a shifting in the obligations between the first and second arrangements by this landlord with his tenant, it is not disputed that there was no application made for a change in rent. The rent regulations permit the landlord to petition for an adjustment when there has been a substantial increase in services.[1]

1. The following are the applicable regulations under the Emergency Price Control Act of 1942, which appear at 8 Fed.Reg. 7323 (1943), 11 F.R. 12055 (1946):

"Sec. 2. *Prohibition against higher than maximum rents.*—(a) General Prohibition.—Regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, no person shall demand or receive any rent for or in connection with the use or occupancy * * * of any housing accommodations within the Defense-Rental Area higher than the maximum rents provided by this regulation;. * * *

"Sec. 4. *Maximum Rents.*—Maximum rents (unless and until changed by the Administrator as provided in Section 5) shall be:

"(a) *Rented on maximum rent date.*—For housing accommodations rented on the maximum rent date, the rent for such accommodations on that date.

*    *    *    *    *    *    *

"Sec. 5. *Adjustments and other determinations.*—(a) *Grounds for increase of maximum rent.*—Any landlord may file a

petition for adjustment to increase the maximum rent otherwise allowable, only on the ground that:

"(3) Substantial increase in services, furniture, furnishings or equipment provided with the housing accommodations since the date or order determining its maximum rent. * * * *"

Section 4(a) of the regulations has been interpreted by the administrative authorities as follows:

"Assume that the maximum rent date is March 1, 1942, and the effective date of the Regulation is July 1, 1942.

*    *    *    *    *    *    *

"3. On November 1, 1941 L leases a house to T for six months, T agreeing to perform the repairs and to maintain the property for the period of the lease and pay a monthly rent of $25. On May 1, 1942, L rents the accommodations to T for six months from that date at a monthly rent of $30, L agreeing to perform all needed repairs and to maintain the property for the period of the lease.

"The rent on March 1, 1942 is $25 and accordingly on July 1, 1942, L must re-

That administrative procedure was open to the landlord here, but he chose instead to make his own determination of the worth of the services which were to be performed by the lessees under the freeze date lease. Such a determination is not binding upon the Housing Expediter. See Elma Realty Co. v. Woods, infra. The freeze date registration of the premises remained in full force, and it permitted a maximum rental of $50 per month. It was unlawful for the landlord to receive more than $50 per month in cash until he had successfully petitioned for an adjustment; any cash payment in excess of that amount was an overcharge which could be recovered by the Expediter.

2. It is of no significance that the Expediter failed to issue a refund order before bringing this action. Refund orders are not necessary when, as here, there has been a registration. Cf. Woods v. Stone, 1948, 333 U.S. 472, 68 S.Ct. 624, 92 L.Ed. 815. They are not required by the statute and damages and equitable relief have been awarded without them. Co-Efficient Foundation, Inc., v. Woods, 5 Cir., 1948, 171 F.2d 691; Woods v. Dodge, 1 Cir., 1948, 170 F.2d 761; Elma Realty Co. v. Woods, 1 Cir., 1948, 169 F.2d 172.

3. The District Court in its discretion awarded damages equal to three times the overcharge. The defendant says that this cannot be done by summary judgment but only after trial on the facts, since the award of the triple amount is a matter of discretion upon all the facts which appear.

But what facts are in dispute that would bear upon the question? The defendant's answer itself establishes that the overcharge was wilful in the sense of being deliberate. Significant in this respect is the provision in the later lease by which the lessees "undertook and agreed to be primarily liable and to save the defendant harmless from any damages that the defendant might be called upon to pay to the United States because of the aforesaid change in the rent of the subject premises." It is quite evident that the defendant moved with his eyes open and the District Judge had enough to go on in imposing triple damages for intentional violation.

4. We think, however, that the equitable relief given by the District Court was much too sweeping. Not only does the decree enjoin the defendant from receiving rents in excess of those permitted by the Housing and Rent Act of 1947,[2] but in paragraph 2(b) the decree enjoins the defendant from directly or indirectly violating the Act in general. Nothing in the record suggests violations other than receipt of above-ceiling rents. A decree cannot stand which would hold subject to the drastic remedy of contempt a defendant whose past offenses are far narrower in scope than the future misconduct enjoined. N.L.R.B. v. Express Publishing Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; Orth v. Transit Investment Corp., 3 Cir., 1942, 132 F.2d 938, 944.

The decree will be affirmed as modified in accordance with this opinion.

---

duce the rent to that amount. However, as the term 'services' includes repair and maintenance [Section 13(a) (7)], if there has been a substantial increase in these services since March 1, 1942, the date determining the maximum rent, the landlord may petition for adjustment." Interpretation M.R.—IV, August 20, 1942, 14 Pike and Fischer O.P.A.Serv. 200:1117–1118 (1944).

2. The complaint was filed before the effective date of the Housing and Rent Act of 1947, 50 U.S.C.A. Appendix, §§ 1881–1910, and charged violations only of the Emergency Price Control Act of 1942. It was proper, however, for the decree to enjoin the receipt of rents in excess of the maximum legal rents permitted by the 1947 Act. The rent ceiling was the same under both statutes, and the overcharge which was wrongful under the 1942 Act was likewise wrongful after the effective date of the 1947 Act. The relevant regulations under the 1942 Act, quoted in footnote 1, supra, are practically the same as those promulgated under the 1947 Act. See 24 Code Fed.Regs. §§ 825.2(a), 825.4(a), 825.5(a) (3) (Supp. 1947).