FORDE v. UNITED STATES.

No. 4563.

United States Court of Appeals
First Circuit.

June 19, 1951.

Rose Forde, pro se.

Benjamin Freidson, Washington, D. C. (Ed Dupree, General Counsel, Leon J. Libeu, Asst. Gen. Counsel, and Walter A. Rochow, Special Litigation Atty., all of Office of Housing Expediter, Washington, D. C., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This complaint was brought by the United States against a landlord alleged to have overcharged two tenants in violation of the provisions of the Controlled Housing Rent Regulation (12 F.R. 4331). As relief, plaintiff prayed (1) for an injunction against future violations, together with an order for restitution to the tenants of the amount of the overcharges, pursuant to § 206(b) of the Housing and Rent Act of 1947, 61 Stat. 199, 50 U.S.C.A.Appendix, §§ 1881 et seq., 1896(b), and (2) for damages in favor of the United States in the amount of three times the sum of the overcharges collected by defendant within one year prior to the date of the filing of the complaint—this pursuant to § 205 of the Housing and Rent Act of 1947, as amended by the Housing and Rent Act of 1949, 63 Stat. 27, the tenants having failed to sue within thirty days after the respective violations—such damages to be reduced by any amount the court might allow the tenants by way of restitution under the other heading of the prayer for relief.

Two apartments, and two tenants, are involved, but the questions are the same in both, and we need refer to one only.

From the allegations of the complaint and the admissions contained in the answer thereto, and from plaintiff's Request for Admission, to which defendant filed no response, Rule 36(a) F.R.C.P., 28 U.S.C.A., the following facts appear:

As stated in a registration statement signed by the defendant and duly filed with the rent director, the rent charged for apartment No. 2, front, 291 Commonwealth Avenue, Boston, Mass., on March 1, 1942, the freeze date for the Eastern Massachusetts Defense-Rental Area, was $52.00 per month. This became originally the maximum rent for the apartment in question, under the Rent Regulation for Housing issued pursuant to the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq.

Upon the termination of the Emergency Price Control Act on June 30, 1947, the then effective maximum rent of $52.00 per month became automatically the maximum rent for the apartment pursuant to § 204 (b) of the Housing and Rent Act of 1947, 61 Stat. 198.

On September 1, 1947, the maximum rent for the apartment in question was increased to $59.80 per month by virtue of a lease executed pursuant to the provisions of § 204(b) of the Housing and Rent Act of 1947.

On March 20, 1950, the rent director issued an order, effective January 6, 1950, increasing the maximum rent for the said apartment to $73.00 per month. Thereafter, and up to the date of the filing of the complaint herein, May 10, 1950, the director issued no order further increasing the maximum rent.

Beginning September 1, 1948, and continuing to March 30, 1950, the landlord charged and received from Lucy Barnard as tenant of the apartment the sum of $115.00 per month, or $42.00 per month in excess of the maximum rent of $73.00 per month. According to the schedule set forth in the complaint, and admitted by the answer, this amounted to total overcharges to this tenant in the sum of $798.00, $420.00 of such overcharges having been received within the year prior to the date of filing the complaint.

Appellant's answer to the complaint admitted all the factual allegations but alleged "that the maximum rents for the apartments listed in the schedule were arrived at in an arbitrary and unreasonable

manner, whereby the defendant was deprived of her property without due process of law"; and further alleged that the defendant "has not, and will not, violate reasonable and lawful rules, regulations and orders of the Office of the Housing Expeditor."

After the filing of the answer, plaintiff moved for summary judgment on the ground that there was "no genuine issue as to any material fact". It is true that the above-quoted language from the answer, though not factual in content and expressing merely the ultimate conclusion of the pleader, would seem to have tendered an issue as to the validity of the rent director's orders establishing the maximum rents for the two apartments. Under the Housing and Rent Act of 1947, in contrast to the provisions of the Emergency Price Control Act of 1942, we take it that a landlord may litigate in the district court an issue as to the validity of a rent regulation or order, in defense to an enforcement suit. See Henry v. Woods, Em.App.1951, 186 F.2d 312. But here, so far as the record discloses, the defendant made no response to plaintiff's motion for summary judgment, and offered to the district court no showing, either by way of affidavit or otherwise, of any factual basis upon which the validity of the rent director's orders could be attacked. The administrative orders were presumptively valid, and the burden would have been on the defendant to establish their invalidity. The overcharges having been admitted, and the defendant having failed to make a showing that there was any genuine factual issue, bearing on the validity of the orders, which needed to be tried out prior to the rendition of judgment, the case was an appropriate one for summary judgment under Rule 56 F.R. C.P. See Griffin v. Griffin, 1946, 327 U.S. 220, 235, 66 S.Ct. 556, 90 L.Ed. 635; Engl

v. Aetna Life Insurance Co., 2 Cir., 1943, 139 F.2d 469, 472.

The district court, on the motion for summary judgment, entered judgment for the plaintiff "for single damages" in the total amount of the respective overcharges to the two tenants, said refunds to be paid to the Treasurer of the United States for disbursement to the tenants, "and, in the event the plaintiff is within a reasonable time unable to locate any of the said tenants, or in the event any of said tenants declines to accept such refund, then the Treasurer of the United States shall retain such money or monies on behalf of the United States of America." A permanent injunction was also issued enjoining the defendant from further violating the Act and the regulation. Whether the plaintiff was entitled to a larger sum than that awarded in the judgment is not before us, since the United States has not taken an appeal.[1]

In the district court, the defendant was represented by counsel. On appeal, however, she appeared *pro se*. She is evidently laboring under a sense of outrage which, we think, is largely attributable to a layman's lack of understanding of the provisions of the regulation, and of the statute. The fact is, that if we should vacate the judgment and send the case back for further proceedings, the defendant might well be faced with an ultimate adverse judgment in a larger sum. But we find no ground whatever for disturbing the judgment.

From the briefs and oral argument we gather that the defendant had originally rented the apartments unfurnished, and that the maximum rents first established were for unfurnished apartments. Referring again to the facts of apartment No. 2, it appears that on September 1, 1948,

---

1. Under § 205 of the Housing and Rent Act of 1947, a landlord receiving payments in excess of the established maximum rent is liable for "liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments * * * received exceed the maximum rent * * * whichever in either case may be the greater amount: *Provided*, That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation."

Mrs. Forde rented this apartment to a new tenant, Lucy Barnard, and that at the tenant's request the landlord furnished the apartment and rented it thereafter as a furnished apartment. In her statement of points, appellant asserts that in furnishing the apartment she "thereby created a completely new and different living unit upon which there was No Maximum Legal Rent. Refer to Section 202 Paragraph (3), The Housing and Rent Act of 1947, as amended." This statutory reference is to the decontrol provisions of § 202(c) (3) of the Act. A mere reading of the section will make it clear that a landlord cannot effectuate decontrol of an apartment by the mere expedient of changing it over from unfurnished to furnished; no new or "additional" housing accommodation is thereby brought into being. Cf. Elma Realty Co. v. Woods, 1 Cir., 1948, 169 F.2d 172, 174.

■ Alternatively, appellant seeks to make a distinction between the bare rooms of the unfurnished apartment, as to which the maximum rent of $59.80 had been established, and the furniture, her own personal property, which she put into the apartment on September 1, 1948. She says that she made a free and fair bargain with the new tenant, under which in effect the tenant was to pay the maximum rent of $59.80 for the bare rooms of the apartment and $55.20 per month for the use of the furniture. She says she considered herself free to bargain for the rental of the furniture, without any legal restriction; that there "is no law, rule or regulation which states that furniture, when it was placed in an apartment which had never been furnished before is under control." If such were the law, it would afford a much too easy way of evading legal rent control. As soon as an unfurnished housing accommodation became vacant, the landlord could furnish it, and offer it for rent as a furnished unit, charging what he pleased for the use of the furniture.

This easy mode of nullifying effective rent control is, however, not available either under the language of the present statute or of the regulation. Nor was it available under the Emergency Price Control Act. See Thierry v. Gilbert, 1 Cir., 1945, 147 F.2d 603.

Section 202(b) of the Housing and Rent Act of 1947, 61 Stat. 196, defines the term "housing accommodations" as meaning "any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes * * * together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property." Section 202(e) defines the term "rent" as meaning "the consideration demanded or received in connection with the use or occupancy * * * of any housing accommodations." Section 204(b) provides that "no person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations" greater than the maximum rent established by the Act or by the regulations or orders of the Housing Expediter thereunder.

■ Turning, then, to the Controlled Housing Rent Regulation (12 F.R. 4331), § 1 defines the terms "housing accommodations" and "rent" in substantially the same broad sense as those terms are defined in the statute. A maximum rent having once been established for a particular housing accommodation, the landlord is not permitted on his own motion to demand or receive a greater sum than the established maximum merely because he has made a substantial increase in the services, furnishings or equipment theretofore provided with the housing accommodation. Under § 5(a) (3) of the regulation, the landlord must first file with the area rent director a petition for adjustment to increase the maximum rent on the ground of such substantial increase in the services or furnishings provided with the housing accommodation. Before making an increased charge, the landlord must await the issuance of an administrative order fixing the amount of the upward adjustment of maximum rent. The standard for adjustment in such cases, as provided in the regulation, is "the amount the Ex-

pediter finds would have been on the maximum rent date, the difference in the rental value of the housing accommodations by reason of such change". In order that the landlord may not suffer by administrative delay in processing the petition for adjustment and in making the necessary factual determination, it is provided in § 5(f) of the regulation that, upon the filing of such a petition by the landlord, the rent director may enter an "interim order" increasing the maximum rent until further order "subject to refund by the landlord to the tenant of any amount received in excess of the maximum rent established by final order in such proceeding." Cf. Goodman v. Bowles, Em.App.1943, 138 F.2d 917. These provisions of the regulation are altogether reasonable and adapted to effectuating the purposes of the Act.

It appears from appellant's statement of points that the landlord here failed promptly to inform the rent director that she had increased the rent to $115.00 upon the basis of having furnished the apartment; she went ahead with the increased charge, without having petitioned the rent director for an order allowing the increase. Her excuse is that she was unaware of the plain requirement of the regulation. How many months went by before she finally submitted the matter to the rent director for administrative action does not clearly appear in the record. From the fact that the rent director on March 20, 1950, issued an order, made retroactive to the effective date of January 6, 1950, increasing the maximum rent of apartment No. 2 to $73.00 per month, we may perhaps infer that January 6, 1950 is the date on which the landlord finally petitioned for the allowance of an increase in rent on account of having furnished the apartment. By the strict letter of the regulation, the maximum rent for the apartment remained at $59.80 from September 1, 1947, until January 6, 1950, the effective date of the order allowing an increase to $73.00 per month. But in computing the overcharges set forth in the schedule under paragraph 5 of the complaint, the plaintiff, quite indulgently, gave the landlord the benefit of the increased maximum rent of $73.00 per month, retroactive to September 1, 1948, when the landlord rented the apartment as a furnished apartment to Lucy Barnard.

The judgment of the District Court is affirmed.