754

SERGIO SEVERO VARGAS, Plaintiff and Appellee, *v.* ERNESTO SÁNCHEZ, Defendant and Appellant.

No. 11564. Argued April 3, 1956.—Decided February 28, 1957.

*Montilla & Benítez* for appellant.  *E. Martínez Rivera* and *Edelmiro Martínez, Jr.* for appellee.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

This is an action to recover three times the sum of the reimbursement of rents ordered by the Economic Stabilization Administrator under the authority vested in him by § 8 of the Reasonable Rents Act (17 L.P.R.A. § 188), and to obtain, besides, the amount of a simple reimbursement of the overcharge collected by the landlord while the Federal Rent Act of 1947 (50 U.S.C.A., App. § 1881 *et seq.*) was in force in Puerto Rico.  The Superior Court rendered judgment sustaining both of the tenant's claims and the landlord appealed.

In brief, the facts which gave rise to this suit are the following: On September 15, 1952, the defendant leased to the plaintiff for a monthly rental of one hundred and fifty dollars an apartment which was registered as a dwelling house under the Federal Rent Control program with a maximum rent of $85.85.  It was stated in the lease contract, among other things, that the lessee would establish a beauty parlor in the apartment.  But the landlord never requested any modification in the registration of the apartment, and

when the federal rent control ceased in Puerto Rico on July 31, 1953, the apartment remained registered as a dwelling house with the same maximum rent under our Reasonable Rents Act.[1] On April 30, 1954, the tenant filed a complaint in the Economic Stabilization Administration alleging that the landlord, appellant herein, was charging him an amount in excess of the maximum rent fixed. The Administrator inspected the premises to determine whether it was predominantly used for commercial or residential purposes, and after summoning the landlord for a hearing, entered the following refund order on June 25, 1954:

". . . he is ordered to refund to his tenant within thirty (30) days after the present date the overcharge collected for 9 months at the rate of $64.15 per month, that is, a total of $577.35. The reimbursement may be made in a total payment, in partial payments, or deducted from the immediate future rent, should the tenant continue in possession of the premises.

"If within the period of 30 days you have not made the refund or reached an agreement with your tenant as to the deduction to be made from future rent, the tenant is entitled to file an action against you for three times the sum of the reimbursement or for $50, whichever is larger, plus the cost and attorney's fees of the plaintiff."

Both parties moved for a reconsideration of that order. The landlord alleged, among other things, that the premises were really and predominantly used for commercial and not for residential purposes, for which reason a refund order

---

[1] Section 9 of said Act provides that: ". . . That in case federal rent control shall cease in Puerto Rico and the Federal Government shall transfer to the Rent-Control Administration all the records and files related to said rent control, the properties already registered under the federal rent-control program need not be again registered, and the Administrator shall have power to accept as the reasonable rent, the rent theretofore fixed to any of said properties by the Federal Agency then in charge of said program. . . ." 17 L.P.R.A. § 189. When the federal rent control ceased in Puerto Rico all the records and files of the Federal Rent Agency were transferred to the Economic Stabilization Administration, and by order of August 1, 1953, the Administrator admitted as reasonable the rents fixed by the Federal Rent Agency which were in force on July 31, 1953.

based on the maximum rent fixed for the apartment as a dwelling house did not lie. On the other hand, the tenant alleged (1) that the reimbursement should not be computed from August 1, 1953, as was done by the Administrator, but from September 15, 1952; and (2) that the landlord had charged him from August 1 to December 31, 1953, a total of $50 for the use of a garage which was included in the rental of the dwelling. The Administrator reaffirmed his determination that the real and predominant use of the premises was always as a dwelling and that he had no authority to order the reimbursement of rent overcharge collected prior to August 1, 1953, but granted the refund of the $50 for the use of the garage. Therefore, on July 22, 1954, he entered an order which in its dispositive portion reads:

". . . the Administrator hereby amends his Order for Refund of June 25, 1954, so that the total amount to be refunded to the tenant will be $627.35. The 30-day term to make the reimbursement, as prescribed in § 8, subsection (d) of the Reasonable Rents Act (Act No. 464 of April 25, 1946), shall begin to run from the date of this Order."

The landlord sought no review of this final order for reimbursement. Nor did he make the reimbursement or reach an agreement with the tenant concerning the form of payment within the 30 days following the issuance of the order. Consequently, on August 27, 1954, the tenant filed his complaint. After a trial on the merits, the lower court rendered the judgment now under review, ordering the landlord to pay: (1) three times the amount of the reimbursement to which the Administrator's order refers—for the overcharge paid from August 1, 1953, to April 30, 1954; (2) the sum of the overcharge paid from September 15, 1952, to July 31, 1953; and (3) the costs plus $300.00 for attorney's fees.

The first question before us is whether defendant-appellant may challenge in this action for treble damages

the validity of the refund order entered on July 22, 1954, without having ever requested the review of the order by the procedure established in § 7 of the Reasonable Rents Act. 17 L.P.R.A. § 187.[2] It was alleged at the trial as a defense that the order was invalid because the real and predominant use of the apartment rented to the plaintiff was for commercial and not for residential purposes. That same contention had been previously raised before the Administrator but he determined that, in fact, the apartment was always used for housing purposes and he so stated in entering his refund order. The lower court held that it lacked jurisdiction to consider the allegation of nullity of the administrative determination. Therefore, it refused to receive the evidence offered by the defendant on that count.

We believe that the lower court acted correctly. We need only state that pursuant to the afore-cited § 7: (1) the proceedings before the Administrator are only reviewable through the proper writ of review filed in the San Juan Part of the Superior Court as provided by the statute, and particularly (2) the San Juan Part of the Superior Court has *"exclusive jurisdiction to determine the validity of any*

---

[2] Said section provides that: "Any rule, regulation, order, or determination of the Administrator shall be reviewable by the San Juan part of the Superior Court through the proper writ of review which the prejudiced party may file within the ten (10) days following the date on which said rule, regulation, order, or determination was promulgated; *Provided, however,* That if the writ has for its sole purpose the reviewing of an order or determination increasing or reducing the lease rental, such writ may be filed in the part of the Superior Court where the property concerned is located, which parts are hereby vested with jurisdiction to take cognizance of such writs of review.

"Exclusive jurisdiction is hereby conferred upon the San Juan part of the Superior Court to determine the validity of any rule, regulation, order, or determination of the Administrator.

"The filing of the writ of review to which this section refers, shall not stay the effects of the rule, regulation, order, or determination of the Administrator.

"The Supreme Court of Puerto Rico may, in its discretion, review through certiorari the decisions or judgments rendered by the Superior Court in the writs of review to which this section refers."

*rule, regulation, order or determination of the Administrator.*" We must emphasize this last restriction for the negative implication contained therein is clear: no court has power or jurisdiction to consider the validity of a rule or order of the Administrator except as specifically and exclusively provided in § 7. Hence, in an action filed to enforce a refund order of the Administrator, such order shall be considered valid whenever the aggrieved party has failed to seek the writ of review in the San Juan Part of the Superior Court.[3] Thus, in *Vélez v. López de la Rosa Hnos.*, 75 P.R.R. 238, 242 (1953), we held that in an action for treble damages based on a rent refund order:

". . . we need not consider whether that order is contrary to § 6 [of the Reasonable Rents Act], or whether it is not justified by that statutory provision, since the defendant has no standing, and is not in an adequate juridical position, to attack collaterally the retroactive validity of the order in this specific proceeding of the case at bar. It does not appear from the record that the defendants have requested the review of the order in question before the San Juan Section of the former District Court of Puerto Rico, now San Juan Section of the Superior Court of Puerto Rico. That court had and has exclusive jurisdiction to determine the validity of an order or determination of the Administrator . . . Since the defendants did not exhaust or avail themselves of the remedy provided by § 7, they cannot attack collaterally the validity of the order in an independent proceeding such as the case at bar."

The exclusiveness of the statutory proceeding of judicial review under the Reasonable Rents Act does not depend on any general principle of administrative law but rather on the specific provision contained to that effect in the Act. In effect, this is not the case of the rule requiring the exhaustion of administrative remedies before resorting to the courts,

---

[3] Of course, if the sole purpose of the writ is to review an order or determination increasing or reducing the lease rental, the law provides that such writ "may be filed in the Part of the Superior Court where the property concerned is located." See 17 L.P.R.A. § 187.

for the landlord in the present case is not seeking equitable relief but rather he is a defendant in an action for treble damages to enforce the administrative order of rent refund. Cf. *Smith* v. *United States*, 199 F. 2d 377, 381–84 (C.A. 1, 1952). It is likewise unnecessary to invoke here the vague concept that an administrative order may not be "collaterally" attacked. See Davis, *Administrative Law* (1951), 604–608; 750–54. Cf. *United States* v. *Ruzicka*, 329 U. S. 287 (1946). At present the situation in Puerto Rico is simply identical with that existing under the Federal Price Control Act of 1942 (56 Stat. 23, 50 U.S.C.A., App., § 901 *et seq.*) : the validity of an order of the Administrator under the Reasonable Rents Act cannot be challenged in an action for treble damages seeking to enforce it because the statute expressly so provides upon limiting the jurisdiction of the courts in the manner we pointed out.

Section 7 of our Reasonable Rents Act substantially reproduces the provisions of § 205 of the Federal Price Control Act of 1942, at least insofar as the exclusive statutory proceeding of judicial review is concerned. The constant case law of the federal courts recognized the principle that under the aforesaid § 205, the only court of justice where the challenge to the validity of a rent refund order could go was the Emergency Court of Appeals. Or stated in another way: any question concerning the invalidity of a refund order could only be raised in that Emergency Court by the writ of review provided by law. It hence followed that the validity of a refund order in any enforcement suit was conclusive. For example: in *Woods* v. *Stone*, 333 U. S. 472, 474 (1948), the Supreme Court of United States held that: "No question is raised, and none could have been raised in this proceeding, as to the validity of the relevant regulations and the refund order, either on the ground of retroactivity or otherwise, because any challenge to the validity of either would have to go to the Emergency Court of Appeals. . . ." See also

*Bozarjian* v. *Woods,* 175 F. 2d 483, 484 (C.A. 1, 1949), and *Mahanor* v. *United States,* 192 F. 2d 873, 877–78 (C.A. 1, 1951). *Cf. Bowles* v. *Willingham,* 321 U. S. 503 (1944); *Yakus* v. *United States,* 321 U. S. 414 (1944); *Ruiz* v. *District Court,* 71 P.R.R. 358 (1950), and *People* v. *Superior Court, ante,* p. 719. Nothing could be more significant in that respect than the change introduced in 1947 in the federal act. The Rent Control Act which was approved that year (50 U.S.C.A., App., § 1881 *et seq.*) eliminated the provisions of exclusive jurisdiction of the Emergency Court of Appeals contained in the Federal Price Control Act of 1942. The courts then held that the challenge to an administrative order relating to rent control issued even in an action for treble damages or in any other proceeding purporting to enforce such order. See *Smith* v. *United States, supra; United States* v. *McCrillis,* 200 F. 2d 884, 886–87 (C.A. 1, 1952), and *Washington* v. *Robertson,* 227 F. 2d 480, 482 (C.A. 7, 1955). On the other hand, in Puerto Rico the San Juan Part of the Superior Court has always maintained "exclusive jurisdiction" to review the determinations of the Administrator of Economic Stabilization on rent control by the special proceeding established in § 7 of the Reasonable Rents Act. The exclusive nature of said proceeding was in no way disturbed by the provisions of the Judiciary Act of 1952. (4 L.P.R.A. § 1 *et seq.*)

██ Pursuant to § 8 of the Reasonable Rents Act (17 L.P.R.A. § 188)[4] the tenant may request directly from the

---

[4] Said section provides in part that:

"(a) The landlord who charges or receives from his tenant an amount in excess of the maximum rent fixed by the Administrator, shall return said excess to his tenant within thirty (30) days following the request therefor in writing made of him by the tenant or the Administrator.

"(b) In those cases where the Administrator reduces the rent, including reimbursement to the tenant, the landlord shall make such reimbursement within the thirty days following the date of the order for reimbursement.

"(c) Reimbursement need not be made within the term prescribed in subsection (a) and (b) if within said term the parties agree, or if in

landlord the refund of what he has paid in excess of the authorized rent. And in that case, if thirty days have elapsed without the landlord refunding the money, a cause of action arises against him ". . . for three times the sum of the reimbursement, or for fifty (50) dollars, whichever is larger, plus the costs and attorney's fees. . . ." Therefore, an order of refund of the Administrator is not a prerequisite to an action for treble damages. *Cf. Camuñas* v. *United States*, 212 F. 2d 540, 542 (C.A. 1, 1954) and *Woods* v. *Polis*, 180 F. 2d 4, 7 (C.A. 3, 1950). Now then, the statute grants to the Administrator ample power to enter refund orders in cases where the premises have been previously registered as well as in cases where the rent is reduced including reimbursement to the tenant. Besides, it is obvious that the Administrator may act *motu proprio* or at the tenant's request. That is why, in our opinion, appellant's argument that the refund order "was unnecessary . . . (whereby) the lower court should have passed to consider the real use given to the leased premises" lacks merit. If the Administrator enters a refund order against a landlord under § 8 of the Act, such order cannot be disobeyed without taking the risks entailed by an action for treble damages. And in any event its validity is reviewable only by the method prescribed, in exclusive terms, in § 7 of the Act.

---

lieu thereof and on petition of any of the parties, the Administrator authorizes, that reimbursement be made in the form of future partial payments. In those cases where the tenant continues in possession of the premises, said partial payments may be deducted from the immediate future rent.

"(d) If the thirty (30) days mentioned in subsections (a) and (b) elapse, without the landlord making reimbursement, or without the parties making the agreement mentioned in subsection (c), the tenant may file an action against the landlord for three times the sum of the reimbursement, or for fifty (50) dollars, whichever is larger, plus the costs and attorney's fees of the plaintiff. For the purposes of the right to file an action for a minimum of fifty (50) dollars, all existing reimbursement owing to the tenant at the time of filing the complaint shall be considered a single cause of action, and the right to sue for a minimum of fifty (50) dollars for each overcharge subject to reimbursement, shall not be recognized."

However, the appellant further alleges that he complied with the refund order within the limitation period, and therefore recovery for treble damages does not lie. The lower court held the contrary and, in our opinion, the evidence introduced at the trial supports that conclusion. In effect, under the afore-cited § 8 and the refund order of July 22, 1954, the landlord was bound to refund the overcharge to the tenant within thirty days after the order, or to reach an agreement with the tenant, within that same term, to refund the excess rent in future partial payments. Otherwise, a cause of action arose to recover three times the sum of the overcharge. Here the appellant-landlord failed to make the refund as directed, or to reach an agreement with the tenant as to partial payments within the statutory period fixed by the law. He merely sent a letter to the Administrator of Economic Stabilization on July 26, 1954, which read: "I wish to inform you, and through you to the tenant . . . that (he) is authorized to deduct the sum stated in the refund order from the future rent which he is to pay." Needless to say this is not an agreement with the tenant. Besides, the evidence in the record shows that the tenant moved from the leased apartment on August 6, 1954, for which reason in no case the future partial payments could "be deducted from the immediate future rents," as provided by paragraph (c) of § 8. And the complaint here was filed on August 27, 1954,[5] five days after expiration of the term allowed to make the refund.

Therefore, the judgment of the lower court will be affirmed insofar as it orders the landlord to pay *first*, three times the sum of the refund ordered by the Administrator

---

[5] It must be added that during the months of June, July, and August 1954, the tenant did not pay the rent but neither did the landlord demand him to do so. On August 24, 1954, the tenant paid the three months owed deducting the overcharge he had paid for the month of May of that same year. On August 30, already too late, the landlord sent a check for the sum of the reimbursement to the plaintiff, which the latter refused to accept.

on the basis of the overcharge collected from August 1, 1953, to April 30, 1954, and *second*, the costs and attorney's fees of plaintiff in this action. However, we believe that the plaintiff was not entitled to the restitution of the overcharge that he paid from September 15, 1952, to July 31, 1953, while the Federal Rent Control Act of 1947 was in force in Puerto Rico. 50 U.S.C.A., App., § 1881 *et seq.* And in holding the contrary the lower court erred.

The reason is simple: under § 205 of the Federal Rent Control Act of 1947,[6] the only action available to the tenant for obtaining the refund or for treble damages (as the case may be) prescribes after one year by express provision of the act. And, in the case of a registered property, the statute of limitation begins to run from the date the landlord violates the Act or the rent regulations by collecting an overcharge from the tenant. That is to say, here the violations consisted in charging monthly rentals in excess of the maximum rent fixed by the Federal Rent Office at the time the property was registered and the last violation took place on July 31, 1953. Therefore, any right on the part of the tenant to

---

[6] That section provides in part that: "(a) Any person who demands, accepts, receives, or retains any payment of rent in excess of the maximum rent prescribed under the provisions of this Act or any regulation, order, or requirement thereunder, shall be liable to the person from whom such payment is demanded, accepted, received, or retained (or shall be liable to the United States as hereinafter provided) for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amounts of (1) $50, or (2) not more than three times the amount by which the payment or payments demanded, accepted, received, or retained exceed the maximum rent which could lawfully be demanded, accepted, received, or retained, as the court in its discretion may determine, whichever in either case may be the greater amount: *Provided*, That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation.

· · · · · · ·

"(c) Suit to recover liquidated damages as provided in this section may be brought in any Federal court of competent jurisdiction regardless of the amount involved, or in any State or Territorial court of competent jurisdiction, *within one year after the date of violation: Provided*, That

claim on that ground had become totally extinguished prior to the filing of the complaint on August 27, 1954.[7]

■ It is true that pursuant to § 204 (*f*) of the federal act all the rights and obligations which arose under the federal rent control while it was in force in Puerto Rico survive even after the termination of the Act, to wit: July 31, 1953.[8]  See *United States* v. *Moore*, 340 U. S. 616, 620–21 (1950).  On the other hand, the defendant did not set up the defense of prescription in the lower court but merely alleged, without further elaboration, that the tenant's second cause of action (claiming the simple reimbursement of the overcharge collected in violation of the act and of the federal regulations) did not state "facts sufficient to constitute a cause of action." This notwithstanding, § 205 (*c*) of the Federal Rent Control Act of 1947, previously quoted, allows the tenant a *substantive* term for filing an action against the landlord for any overcharge paid.  It is not a remedial statute of limitation which is waived unless the defense of prescription is raised specifically and timely.  The right of

---

if the person from whom such payment is demanded, accepted, received, or retained . . . fails to institute an action under this section within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the United States may settle the claim arising out of the violation or within one year after the date of violation may institute such action. . . ."  (50 U.S.C.A., App., § 1895) (Italics ours.)

[7] The one-year period of limitation provided in § 205 normally begins to run from the date of payment of each rent overcharge.  That is why only the total overcharge paid within the year immediately before commencement of the suit is recoverable.  See *Shockly* v. *Winkler*, 196 F. 2d 927 (C.A. 5, 1952) ; *Leimer* v. *Woods*, 196 F. 2d 828 (C.A. 8, 1952) ; *Magnotta* v. *Leonard*, 102 F. Supp. 593 (D. C. Pa. 1952).  This notwithstanding, if in violation of the rent regulations the landlord did not register the property, the one-year statutory period did not begin to run from the date of collection of the overcharge but from the moment that the landlord violated the refund order.  *Woods* v. *Stone*, 333 U. S. 472 (1948).  In the case at bar, as we already stated:  (1) the apartment rented was registered in the Federal Rent Office;  (2) a maximum rental had been fixed;  and (3) a refund order was never entered under the federal act.

[8] The section in question, as amended in 1953 (67 Stat. 23), provides that when the Federal Rent Control Act of 1947 ceases, all the provisions

action which would otherwise be available to the tenant prescribes and becomes totally extinguished within one year, that is to say, his right of action wholly disappears. See *Leimer* v. *Woods*, 196 F 2d 828, 837–38 (C.A. 8, 1952) ; *Hogan* v. *Coleman*, 96 N. E. 2d 864 (Mass. 1951), and *Young* v. *Margiotta*, 71 A. 2d 924, 926 (Conn. 1950). *Cf. Peña* v. *Eastern Sugar Associates*, 75 P.R.R. 288, 306–07 (1953), and in general: *Developments in the Law, Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1198–99 (1950).[9]

▇ Moreover, it would be idle to seek in § 206 (*b*) of the Federal Rent Act of 1947 a justification for circumventing the defense of prescription in this case.[10] Unquestionably, under that section the restitution or reimbursement of any overcharge collected by the landlord could be ordered without any time limit. In that respect it matters little that the judicial order necessarily benefits the tenant. And, of course, the one-year statutory period established by § 205 would be inapposite in that case. In effect, pursuant to § 206 (*b*) a restraining order or a permanent or temporary injunction *"or other order"* may be granted to protect the

of that Act, as well as the regulations, orders, and requirements thereunder "shall be treated as still remaining in force for the purpose of sustaining any proper suit or action with respect to any right or liability incurred prior to the termination date specified in such paragraph." 50 U.S.C.A., App., § 1894 (f).

[9] Concerning the rule in question see also: *Hart* v. *Leihy*, 122 F. Supp. 510, 511 (D. C. Mo. 1954) ; *Magnotta* v. *Leonard, supra; Harding* v. *Parker*, 102 F. Supp. 36 (D. C. Minn. 1952) ; *Riotte* v. *De Somov*, 102 N.Y.S. 2d 929 (1951) ; *Stein* v. *Aintablian*, 100 N.Y.S. 2d 90 (1950) ; *Kene* v. *Gutmann*, 91 N.Y.S. 2d 184 (1949).

[10] Section 206 (*b*) provides the following: *"Whenever in the judgment of the President any person has engaged or is about to engage in any* acts or practices which constitute or will constitute a violation of any provision of this Act, or any regulation or order issued thereunder, *the United States may make application to any Federal, State, or Territorial court of competent jurisdiction for an order enjoining such acts or practices, or for an order enforcing compliance with such provision,* and upon a showing that such person has engaged or is about to engage in any such acts or practices *a permanent or temporary injunction, restraining order, or other order shall be granted without bond."* (50 U.S.C.A., App., § 1896 (b). (Italics ours.)

public interest indicated therein: to avoid any violations of the act and of the rent regulations and orders. An order of refund or for the reimbursement of the overcharge unlawfully collected by a landlord is precisely a measure to restore the *statu quo ante*, in that way protecting more effectively said public interest. That is why a court may adopt it when applying § 206 (*b*), bearing in mind, above all, the ample power traditionally possessed by judges in shaping effective and adequate remedies in actions growing out of equity.[11]   But said order of restitution or reimbursement of the overcharge is always a discretionary and subsidiary relief: it may only be decreed, if the circumstances so warrant, in a suit filed *by the United States* for the protection of the public interest and never at the instance of a tenant in a private suit. It so appears in clear terms in the text of § 206 (*b*) and also in the case law laid down in the federal courts. See *United States* v. *Moore, supra; Porter* v. *Warner Holding Co.*, 328 U. S. 395 (1946).[12]

For the foregoing reasons the judgment of the Superior Court will be modified and the defendant-appellant ordered to pay plaintiff the sum of $1,882.05, that is to say, three times the sum of the reimbursement specified in the order entered by the Administrator of Economic Stabilization, plus costs and $300 for attorney's fees.

Mr. Justice Marrero did not participate herein.

---

[11] Cf. Chafee and Pound, *Cases on Equitable Relief Against Torts* (1933) 246 *et seq.;* 281 *et seq.;* 438–79; 1 Pomeroy, *A Treatise on Equity Jurisprudence*, 56–91; 227 *et seq.;* Hanbury, *Modern Equity* (6 th Ed., 1952) 174; 577–99; Pound, *An Introduction to the Philosophy of Law* (1922) 100–43; Eder, *A comparative Survey of Anglo-American and Latin-American Law* (1950) 77–85; Rabasa, *El Derecho Angloamericano* (1944) 136–53; 208–15. Concerning the concept of equity, considered from a historical as well as from an analytical point of view, see the following articles by Castán Tobeñas: *La Equidad y sus Tipos Históricos*, 187 Rev. Gen. de Legislación y Jurisprudencia, 697 (1950), and *La Idea de Equidad y su Relación con Otros Conceptos, Morales y Jurídicos, Afines* 188 *ibid.* 217 and 361 (1950).

[12] To that effect see also: *Camuñas* v. *United States*, 212 F. 2d 540, 541–42 (C.A. 1, 1954); *United States* v. *Owens*, 207 F. 2d 725 C.A. 6,

1953) ; *United States* v. *Sheff,* 194 F. 2d 596, 597 (C.A. 9, 1952) ; *United
States* v. *Pileggi,* 192 F. 2d 878 (C.A. 2, 1951) ; *Mahanor* v. *United States,*
192 F. 2d 873, 877 (C.A. 1, 1951) ; *Orenstein* v. *United States,* 191 F. 2d
184 (C.A. 1, 1951) ; *Jackson* v. *Woods,* 182 F. 2d 338 (C.A. 5, 1950) ; and
*Woods* v. *Wayne,* 177 F. 2d 559 (C.A. 4, 1949).